28 | 283
72 | 272

## SAMUEL JAYNE *vs.* DILLONY M. DILLON.

Where a party who is a defendant in an execution, furnishes an officer with a list of slaves to be levied upon, and the officer accordingly enters them on the execution as levied upon, and at the defendant's request the slaves are permitted to remain for a short time in his possession: *Held,* that this is a sufficient levy, and is equivalent to actual seizin.

It was an admission of the levy by the defendant in execution, and he cannot be heard to deny it. *Held,* that it is a stronger case in favor of the sufficiency of the levy than *Walker* v. *Shotwell,* 13 S. & M. 549, where the principle is settled.

The defendant in the execution in April, 1840, executed a deed in trust upon the same property levied upon, by the terms of which he was entitled to possession until default was made in paying the last instalment of the debt secured by said deed, which was not to extend beyond March, 1843; and default having been made in the payment, the consequent right of possession secured to him by the deed was gone. *Held,* that he could not after that, maintain an action founded on the right of possession of the property.

The defendant in the execution, after causing the property to be levied on, cannot be heard to make an objection to the liability of the property levied upon as subject to the execution. If such an objection should be made by the trustee, it would not be received with much favor under the circumstances.

Such a continuance of the possession of the property by the defendant in the execution will be considered as fraudulent as to the rights of creditors, and the deed of trust will afford no barrier to the property against execution creditors or subsequent purchasers.

IN error from the circuit court of Lawrence county; Hon. W. P. Harris, judge.

The facts of this case are contained in the opinion of the court.

*Freeman* and *Dixon*, for appellant.

This was an action of replevin brought by Jayne against Dillon for a negro slave named Isabel. The proof shows that this slave was embraced, with other property, real and personal, in a deed in trust made by Jayne to one Carson, to secure the Planters Bank in a debt due by Jayne; that the possession remained with Jayne, Carson never having been required to foreclose the deed by sale; that whilst the property thus remained, one Mullins, acting as special deputy of the marshal of southern district of Mississippi, pretended to levy upon the slave Isabel, but never took her into his possession or in other manner made a levy thereof, but by receiving a list of property of Jayne, which he returned in his pretended levy; subsequently, a *rendi* issued to the marshal, which seems to have found its way to the hands of said Mullins, but who never had under it any authority, either by special deputation from the marshal, nor was he a general deputy to execute this *rendi;* yet under it he proceeded to sell the slave Isabel, when Dillon became the purchaser and got the possession; and now this action is brought by Jayne to recover the possession.

The questions that arise in the case are, —

1. Was the levy made by Mullins on the *fi. fa.* legal and valid, so as to change the possession of the slave from Jayne to the marshal, and authorize a sale under future process?

2. Was the sale under the *rendi* by Mullins, who had no authority from the marshal to act as his deputy, a valid one to pass either title or lawful possession to Dillon the purchaser?

3. Was not the lien of the trust deed prior to that of the judgment?

4. If the trust lien was prior, was there any interest or property in Jayne in slave Isabel subject to levy and sale?

5. Was not Jayne's possession of the slave under the deed in trust a lawful possession, though the title was in the trustee, so as to authorize Jayne to maintain in law a possessory action for the recovery of the slave to the uses of the deed?

6. Jayne, after the deed executed, had but an equity of

redemption in the slave; is such an interest a subject of seizure and sale under execution? We think not.

No counsel for appellee.

Mr. Justice HANDY delivered the opinion of the court.

This was an action of replevin, brought by the plaintiff in error against the defendant, in the circuit court of Lawrence county, to recover the possession of a negro slave, under the following state of facts.

In August, 1848, an execution was issued from the circuit court of the United States for the southern district of this State, against the plaintiff in error, and delivered to the marshal. A duly appointed deputy of the marshal went to the residence of the plaintiff with the execution for the purpose of levying it, and informed the plaintiff of his purpose, who made out and handed to the officer a list of the slaves, which he marked on the execution. He did not call up the negroes severally and levy upon each one in that manner, but he saw as many of them passing about as were contained in the list furnished by the plaintiff. At the plaintiff's solicitation, he agreed to leave the slaves with him until he could go to the town of Monticello which was near, and see the attorney who controlled the execution, and make terms with him. The plaintiff and the attorney could not agree upon terms, and when the officer went back to take the slaves, they had been removed. The execution was returned with the levy upon the slave in controversy entered upon it, and subsequently a writ of *venditioni exponas* was issued to sell the slave. Under the authority and by the request of the attorney for the plaintiff in the execution, the same deputy marshal, who had made the levy of the execution upon the slave, sold the slave under the writ of *venditioni exponas*, which had been delivered to him by the attorney for the plaintiff therein; but in this he acted without authority from the marshal, having acted previously in virtue of a special deputation, which had ceased. At this sale, the defendant in error became the purchaser and paid the purchase-money to the

deputy marshal, who paid it to the plaintiff's attorney, but made no return of it upon the execution.

It further appeared, that in April, 1840, the plaintiff executed a deed of trust, conveying the slave in controversy, with other property, to one Carson, as trustee, to secure a debt due by him to the Planters Bank, to be paid in three instalments, he being allowed three years from 20th March, 1840, to pay the debt in full; in which it was stipulated that the property was to remain in the possession of the plaintiff until default should be made in paying the instalments as agreed, and on such default, that the trustee should take possession of it.

It also appeared, that the plaintiff failed to pay the debt according to the terms of the deed of trust; and that the trustee had never demanded possession of the property.

The verdict and judgment were for the defendant, and the plaintiff has brought the case here.

On the trial below many instructions were given by the court to the jury. The merits of the case depend upon the question whether, under the facts proved, the plaintiff was entitled to the possession of the slave so as to entitle him to maintain the action of replevin. His right of possession is placed on two grounds: 1st. That the sale under which the defendant purchased, was without authority and void; and, 2d. That the slave was covered by the deed of trust at the time of the levy, and not subject to levy under the execution. Let us examine these positions.

First. Although the sale may have been void for want of authority in the person assuming to act as deputy marshal in making it, yet it is urged by the defendant in error that the slave had been previously taken in execution under proper authority, and the levy had not been disposed of, that this divested the plaintiff's right of possession and vested the right in the marshal, and that the plaintiff was the mere bailee of the marshal until the bailment was determined by the marshal when he went again to take possession of the slave. To obviate this objection, it is insisted in behalf of the plaintiff, that no legal levy was made by the deputy marshal, because

the slave was not actually seized by the officer or taken into his custody. It appears that the plaintiff furnished the officer with a list of slaves, including the one in controversy, to be levied upon; and that he accordingly entered them on the execution as levied upon, and at the plaintiff's request permitted them to remain for a short time in his possession. This was a sufficient levy, and equivalent to an actual seizure. It was an admission of the levy by the defendant in execution, and he could not be heard to deny it. It is a stronger case in favor of the sufficiency of the levy than that of *Walker* v. *Shotwell,* 13 S. & M. R. 549, where the principle just stated is held.

Upon this point, therefore, we think that the plaintiff's right of possession is fully negatived.

Second. Did the deed of trust give the plaintiff such right of possession as to entitle him to maintain the action?

By the terms of the deed he was entitled to the possession until default was made in paying the instalments of the debt, but not to extend beyond March, 1843. It appears that default was made, and of course the right of possession secured by the deed was gone, and the plaintiff only had such possession as he would have had without the deed, whether demand of possession were made by the trustee or not. It is manifest that, after default, he could not claim possession under the deed, for the right was shown by the deed to be in the trustee. Nor could he maintain an action founded on the right of possession, when his own evidence showed that right to be in another.

As to liability of the slave to levy under the execution, we do not think that the plaintiff should be heard to make such an objection, after having, of his own accord, caused the property to be levied upon as subject to the execution. And even if the objection were made by the trustee, it could not be received with much favor. For it appears that the default under the deed of trust was made at least as early as March, 1843, and it then became the duty of the trustee to take possession of the property and apply it in satisfaction of the trust. Yet he took no steps against it, but permitted it to remain in the possession of Jayne until the levy of the execution, which was upwards of five years, and even to the time this suit was instituted, which

was more than seven years from the forfeiture of the right of possession. Such a continuance of possession would be considered fraudulent as to the rights of creditors, and under such circumstances, the deed of trust would afford no barrier to the property against execution creditors or subsequent purchasers.

But whether this objection would be available or not, if made by the trustee, it cannot be set up by the plaintiff under the circumstances of this case.

The action of the court below was in conformity to these views, and the judgment is therefore affirmed.